IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA } | |
| } | |
| v.  } | Case No. 2:17-cv-0419-AKK-TMP |
| } | |
| JOEL IVERSON GILBERT, } | |
| STEVEN GEORGE McKINNEY, } | |
| DAVID LYNN ROBERSON, } | |
| } | |
| Defendants. } | |

### DEFENDANTS' JOINT MOTION
### TO COMPEL PRODUCTION
### OF UNREDACTED FBI INTERVIEW REPORTS

Joel Gilbert, Steven McKinney, and David Roberson (collectively, "Defendants") move the Court to compel the Government to produce to the Court for *in camera* inspection unredacted copies of two FBI 302 reports ("302s") that memorialize the FBI's February and March 2017 interviews with the Government's key witness, former state legislator Oliver Robinson. The Government has made 302s available for review, but several of those 302s contained redactions. Based on the context of the remainder of the 302s, these redacted portions likely contain evidence that the Government should disclose under *Giglio* or *Brady*.[1] Accordingly, Defendants move the Court to compel the Government to produce unredacted 302s for

---

[1] *See Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963).

the Court to conduct an *in camera* inspection to determine if *Brady*, *Giglio*, or otherwise discoverable evidence is within those reports.

## Background

On or about September 27, 2017, the Government unsealed an indictment against Mr. Gilbert, Mr. McKinney, and Mr. Roberson.[2] The indictment charges Defendants with one count of conspiracy to commit bribery and honest–services wire fraud (18 U.S.C. § 371), one count of bribery concerning programs receiving federal funds (18 U.S.C. §§ 2, 666(a)(2)), three counts of honest-services wire fraud (18 U.S.C. §§ 2, 1343, 1346), and one count of money-laundering conspiracy (18 U.S.C. § 1956(h)).[3] The allegations in the indictment concern Mr. Gilbert's and Mr. McKinney's dealings with Alabama State Representative Oliver Robinson through their law firm (Balch & Bingham, LLP) ("Balch"), Balch's business client (Drummond Company, Inc.) ("Drummond"), Mr. Roberson (a Drummond executive), and Robinson's foundation (the Oliver Robinson Foundation) ("the Foundation") regarding environmental issues and regulatory actions in the Birmingham area.[4] In short, Mr. Gilbert, Mr. McKinney, and Balch were retained by Drummond to address potential environmental regulatory action by the Environmental Protection Agency

---

[2] *See generally* [Doc. 1] (Indictment).

[3] *See generally id.*

[4] *See id.* at ¶¶ 1–15.

("EPA"). Defendants, through Balch and Drummond, enlisted the help of the Foundation as a consultant in performing community outreach activities, primarily in Tarrant, Alabama.

Robinson pleaded guilty to fraud relating to his campaign account, fraud relating to his organizations, tax evasion, and conspiracy to commit bribery and honest-services fraud (relating to his dealings with Defendants).[5] As part of his plea, Robinson agreed to cooperate by providing testimony regarding, among other things, other persons.[6]

As part of its discovery obligations in this case, the Government made portions of its file available for review by defense counsel. This review included 302s of interviews the FBI and prosecutors had with Robinson during their investigation of the present case and of unrelated matters. In two of the 302s—the February 13, 2017 ("February 302"),[7] and the March 2, 2017 ("March 302"), interviews—the

---

[5] *See generally United States v. Robinson*, 2:17-cr-00267-AKK-TMP (N.D. Ala. June 22, 2017) (Doc. 2) (Exhibit A).

[6] *Id.* at 26.

[7] The United States Attorney's Office for the Northern District of Alabama refuses, as a matter of policy, to provide a defendant with copies of FBI interview memos or grand jury transcripts. See United States Attorney's Office, Northern District of Alabama, *Discovery Policy*, 6 (Mar. 2010), https://www.justice.gov/sites/default/files/usao/pages/attachments/2015/04/01/aln_discovery_policy.pdf ("Except as provided herein, all law enforcement reports of interview (ROIs) such as FBI 302s, and DEA 6s, will be made available for

Government redacted portions, including approximately fifty-six lines of redactions in the February 302 interview. Mr. Gilbert previously requested that the Government provide the unredacted copies on grounds that the material qualified as discoverable under *Brady* and *Giglio*.[8] The Government refused to produce the unredacted portions, claiming the redacted portions did not meet *Giglio* and were related to a collateral, ongoing investigation.[9] Mr. Gilbert asked the Government to reconsider, given that the topics addressed potentially known but uncharged conduct.[10] The Government maintained its same position.[11]

---

inspection at the United States Attorney's Office at a time following arraignment as agreed upon by the parties.") (Exhibit B).

As a result of the "no copy" policy, defendants in this District must go to extraordinary burden and expense to obtain information in a usable form. Witness statements in this Motion reflect counsel's notes taken over a period of days in a conference room at the United States Attorney's Office. Counsel represents that the quotes are substantially accurate and true, and would reflect the original documents, had copies been provided.

[8] *See* Letter from J. Sharman to G. Martin *et al* (Nov. 3, 2017) (Exhibit C). To be clear, Mr. Gilbert presently does not seek unredacted copies of all witnesses' 302s; he seeks review of only the redacted Robinson 302s.

[9] *See* Letter from G. Martin to J. Sharman (Nov. 13, 2017) (Exhibit D).

[10] *See* Letter from J. Sharman to G. Martin *et al* (Nov. 22, 2017) (Exhibit E).

[11] *See* Letter from G. Martin to J. Sharman (Dec. 5, 2017) (Exhibit F).

## **Argument**

Even a cursory review of the 302s raises the inference that the redacted portions involve *Giglio* or *Brady* material. The surrounding statements indicate Robinson's knowledge of or involvement in potentially corrupt legislative action touching on the Birmingham Water Works Board ("BWWB") or the Mayor-Council Act. If Robinson has provided information to the Government concerning other illegal acts in exchange for preferential treatment—either a favorable recommendation for sentencing or in the forbearance of bringing additional charges—then he could be impeached on those matters, which would fall in the ambit of *Giglio*.

Prosecutors have an ongoing obligation to turn over items that materially favor the defense or "any impeachment evidence that is likely to cast doubt on the reliability of a witness whose testimony 'may well be determinative of guilt or innocence.'" *See United States v. Jordan*, 316 F.3d 1215, 1253 (11th Cir. 2003) (citations omitted). "'The thrust of *Giglio* and its progeny has been to ensure that the jury know the facts that might motivate a witness in giving testimony.'" *Depree v. Thomas*, 946 F.2d 784, 797 (11th Cir. 1991) (quoting *Smith v. Kemp*, 715 F.2d 1459, 1467 (11th Cir.), *cert. denied*, 464 U.S. 1003 (1983)). Without a doubt, 302s are subject to *Brady* analysis. *See, e.g., Ogle v. Estelle*, 641 F.2d 1122, 1124–26 (5th Cir. Unit A Apr. 1981)

5

(applying *Brady* analysis to 302s in *habeas corpus* proceeding).[12] In situations such as Defendants', where the prosecution has not disclosed information the defendant specifically requests, the Court need only consider "whether 'the suppressed evidence might [affect] the outcome at trial.'" *Id.* at 1125 (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)).

One example of impeachment evidence comes from *Giglio* itself—a promise by prosecutors not to prosecute an important witness in exchange for the witness's cooperation. *See Giglio*, 405 U.S. at 151, 154–55. And withholding information about a witness's cooperation with the Government can be a *Giglio* violation. *See United States v. King*, 239 Fed. App'x 852, 855 (4th Cir. 2007) (finding Government violated *Giglio* by not disclosing one witness's prior work for Government and "that the Government had taken care of a DUI charge on behalf" of another witness, although refusal to grant mistrial on this basis was not plain error). "'In the typical case where a defendant makes only a general request for exculpatory material under *Brady v. Maryland*, it is the [prosecuting entity] that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final.'" *United States v. Pou*, 953 F.2d 363, 366 (8th Cir. 1992) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987)) (alteration in original).

---

[12] Decisions of the "Old Fifth Circuit" are binding on the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

It is proper for the District Court to conduct an *in camera* review in circumstances where the defendant identifies specific documents in the prosecutor's file that may contain impeachment materials. *See id.* at 367 (discussing *United States v. Kiszewski*, 877 F.2d 210, 215–16 (2d Cir. 1989)). Specifically in *Kiszewski*, the Second Circuit remanded for the district court to conduct an *in camera* review of an FBI agent's personnel file where the Government admitted there were prior disciplinary investigations and actions within the file but concluded they were not material for impeachment. *See Kiszewski*, 877 F.2d at 215–16. Appellate courts have found error where the district court relies only on the assurances of the Government and does not conduct *in camera* review of specific pieces of evidence that a defendant identifies as potentially containing exculpatory or impeaching evidence. *See United States v. Gaston*, 608 F.2d 607, 613–14 (5th Cir. 1979). *See also United States v. Nunez*, No. 14-284, 2016 WL 3658980, at *3 n. 7 (E.D. La. July 7, 2016) (citing *Gaston*, F.2d at 613) ("[V]arious appellate courts . . . have held that in camera *Brady* review is not only proper, but is on occasion mandated.").

Similarly, Defendants have identified for this Court two particular documents—select portions within about twenty-three (23) pages—with impeachment material. Within these approximately two dozen pages are several examples of what appear to be *Giglio* materials.

In the February 13, 2017, interview, for example, the Government asked Robinson about his sponsorship of H.B. 399 (relating to the BWWB) and of H.B. 515 (relating to the Mayor-Council Act).[13] "Robinson confirmed that it began with [another Alabama state legislator] bringing him the legislation. [About three (3) lines redacted]. Robinson sent the legislation out for review by the other legislators."[14]

These matters are critical to Robinson and his credibility: the FBI agent drafting the 302 notes wrote, "At this point, Robinson began crying."[15]

Remaining portions of the February 302 compound Defendants' concerns—the following page references an additional fifty-three (53) lines of redacted text in a portion discussing the same legislation.[16] Redactions concerning this legislation are in the March 302, too.[17]

When Mr. Gilbert asked for unredacted portions, the Government claimed that "[t]he redactions in the Oliver Robinson 302s do not contain *Giglio* material but do involve information about an ongoing investigation that we intend to keep

---

[13] February 302.

[14] *Id.* For the purposes of this motion, Defendants removed the name of the other state legislator from the quoted material.

[15] *Id.*

[16] *See id.*

[17] *See* March 2017.

confidential. Because disclosure of the redacted information could impede law enforcement activities, we will not provide unredacted 302s at this time."[18] Despite the Government's claims otherwise, these particular redacted portions, when viewed in context, raise the prospect of *Giglio* material.

First, the Government asserts that the redactions involve another criminal investigation. Following that assertion, based on the context and location of the redaction within the report, one can assume the investigation involves the BWWB or the Mayor-Council Act or related legislators with whom Robinson was associated. Robinson may have participated in a possibly-criminal act when one of the very next sentences following a redaction states that Robinson took an affirmative step—sending the legislation to other legislators. Putting the pieces together, Defendants are concerned that Robinson is either complicit in another criminal offense or has knowledge helpful to the Government's investigation such that the Government may have offered Robinson, but has not disclosed to Defendants, some type of immunity or favorable treatment relating to the BWWB or the Mayor-Council Act.[19]

---

[18] Exh. C at 2.

[19] Robinson pleaded guilty to an information rather than an indictment. This form of charging document hampers Defendants' ability to assess what potentially favorable treatment the Government granted Robinson. Had the Government indicted Robinson and then Robinson reached a plea agreement, the Government may have agreed to dismiss certain counts. However, with an information only, Robinson outright pleaded guilty to only certain charges.

Undeniably, Robinson is a key witness for the prosecution, which underscores the necessity of the Court's review. The importance of the witness's testimony only enhances *Giglio*'s significance. *See Jordan*, 316 F.3d at 1253 (discussing importance of *Giglio* in context of "witness whose testimony 'may well be determinative or guilt or innocence'"). Each count in Mr. Gilbert's indictment involves his alleged activities with Robinson.[20] The Government was able to indict Defendants without Robinson's live testimony, but the Government has no hope of convictions without it. Moreover, because of Robinson's agreement to cooperate, his testimony at Defendants' trial is not only essential but also essentially guaranteed.[21]

As discussed above, promises of immunity or favorable treatment fall squarely within the contemplation of *Giglio*. *See* 405 U.S. at 151, 154–55. Because Defendants have identified two discrete reports, as compared to asking for the prosecutors' entire file, Defendants ask the Court to order the Government to produce

---

Additionally, any favorable treatment relating to other uncharged crimes would be in addition to the offenses for which he pleaded guilty. *See* February 302.

[20] *See generally* [Doc. 1].

[21] *See* February 302.

As Defendants point out elsewhere, the Government kept Robinson out of the grand jury that indicted Defendants, apparently fearful that he would testify consistently with what he told the FBI in multiple interviews—thus offering nothing incriminating about Defendants. The only Robinson "testimony" the grand jury heard was the hearsay of the FBI case agent, whose testimony contradicted what Robinson actually said in the interviews.

unredacted copies of the February and March 302s for the Court's *in camera* review. *See Pou*, 953 F.2d at 367 (citing *Kiszewski*, 953 F.2d at 215–16). Furthermore, should the Court determine that *Brady* or *Giglio* materials are within those reports, Defendants ask the Court to order the Government to produce or permit inspection of those unredacted portions.

## Conclusion

Defendants ask this Court to order the Government to produce unredacted copies of the 302s discussed above for the Court to perform an *in camera* review to determine if the redactions contain any materials that are discoverable or are necessary to protect Defendants' due process rights at trial. If the Court finds materials that any of the Defendants rightfully should have in preparation for trial, Defendants ask the Court to order production of those unredacted materials.

Respectfully submitted this 16th day of February, 2018.

/s/ Jackson R. Sharman, III
_____
Jackson R. Sharman, III
jsharman@lightfootlaw.com
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Telephone: (205) 581-0700
One of the Attorneys for Joel Iverson Gilbert

OF COUNSEL:
Brandon K. Essig
*bessig@lightfootlaw.com*
Jeffrey P. Doss
*jdoss@lightfootlaw.com*
LIGHTFOOT, FRANKLIN & WHITE, LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203
Telephone: (205) 581-0700

David P. Burns
*dburns@gibsondunn.com*
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 887-3786

/s/ Henry W. Asbill / by JPD w/ permission
Henry W. Asbill
*hasbill@jonesday.com*
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Telephone: (202) 879-3939
One of the Attorneys for David Lynn Roberson

OF COUNSEL:
David Bouchard
*dbouchard@jonesday.com*
JONES DAY
1420 Peachtree Street NE – Suite 800
Atlanta, GA 30309
Telephone: (404) 581-8386

Brett M. Bloomston
brett@the bloomstonfirm.com
THE BLOOMSTON FIRM
2151 Highland Avenue – Suite 310
Birmingham, AL 35205
Telephone: (205) 212-9700

12

_[signature: Stewart Davidson McKnight, III /by jmc w/ permission]_
Stewart Davidson McKnight, III
*dmcknight@baxleydillard.com*
BAXLEY DILLARD MCKNIGHT
JAMES & MCELROY
2700 Highway 280 – Suite 110 East
Birmingham, AL 35223
Telephone: (205) 271-1100
One of the Attorneys for
Steven George McKinney

OF COUNSEL:
Craig A. Gillen
*cgillen@gwllawfirm.com*
GILLEN WITHERS & LAKE, LLC
3490 Piedmont Road NE – Suite 1050
Atlanta, GA 30305
Telephone: (404) 842-9700

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2018, I submitted the original document in conventional paper format, along with a PDF copy, to the Clerk of Court, and I further certify that I have sent a copy of this document by electronic mail to the following:

>George A. Martin, Jr. (*george.martin@usdoj.gov*)
>Robin Beardsley Mark (*robin.mark@usdoj.gov*)
>John B. Ward (*john.b.ward@usdoj.gov*)

_[signature]_
Of Counsel