

# DISCOVERY POLICY

**THIS POLICY IS FOIA EXEMPT-DELIBERATE AND PRE-DECISIONAL**

United States Attorney's Office
Northern District of Alabama

**This policy is effective for cases indicted after March 2010**

United States Attorney
**Joyce White Vance**

---

**PROTECTED INFORMATION**

**ATTORNEY CLIENT PRIVILEGE/WORK PRODUCT DOCTRINE**

**FOIA/PRIVACY ACT PROTECTED - 5 U.S.C. § 552(b)**

The discovery policy set out below replaces the Office's former discovery policy issued in October 2005 and implements the Guidance for Prosecutors Regarding Criminal Discovery contained in the January 4, 2010 memorandum issued by Deputy Attorney General David W. Ogden.  This policy incorporates the standard criminal discovery order issued by the United States District Court in the Northern District of Alabama.  This policy is designed to encourage consistency in the discovery practice within the office.  All AUSAs are required to be familiar and to practice law in compliance with it.  Any questions should be resolved by consulting a supervisor.

This policy provides internal guidance for the United States Attorney's Office for the Northern District of Alabama.  It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any civil or criminal matter. *See United States v. Caceres*, 440 U.S. 741 (1979).  Nor are any limitations hereby placed on litigative prerogatives of the United States Attorney's Office for the Northern District of Alabama.  Should counsel for a defendant complain about any alleged violation of this policy, the only recourse is to raise his or her complaint to the Office of the United States Attorney, since this policy creates no enforceable right of discovery. The policy favors disclosure and incorporates the Department's guidance to provide discovery, in appropriate cases, beyond what the rules, statutes, and case law mandate. ***At the discretion of the AUSA handling a case, copies of items falling within the purview of Rule 16(a) of the Federal Rules of Criminal Procedure maybe provided***. ***In those cases that are document intensive or otherwise complex, the government only obligates itself to provide reasonable access to discovery items for inspection. Nothing in this policy shall obligate the government to provide a defendant with copies of any item at the government's expense.***

The Government's disclosure[1] obligations are generally set forth in Fed. R. Crim. P., Rule 16 and Rule 26.2, 18 U.S.C. § 3500 (*Jencks* Act), *Brady*[2], and *Giglio*[3].  AUSAs should comply with USAM Section 9-5.001, which sets forth DOJ policy regarding disclosure of exculpatory and impeachment information.

**A.    Discovery guidance in cases involving national security**

---

[1]For purposes of this policy, anytime the words disclosure or disclose are used herein, this contemplates making materials available for review unless otherwise specified.

[2]*Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny set out the Government's duty to disclose material evidence favorable to an accused which tends to negate guilt or mitigates punishment.

[3]*Giglio v. United States,* 405 U.S. 150 (1972), and its progeny extend *Brady* to all material information that might be used to impeach a government witness.

Cases involving national security, including terrorism, espionage, counterintelligence, and export enforcement, can present unique and difficult criminal discovery issues.  The Department of Justice has developed special guidance for those cases, which is contained in Acting Deputy Attorney General Gary G. Grindler's September 29, 2010, memorandum, "Policy and Procedures Regarding the Government's Duty To Search for Discoverable Information in the Possession of the Intelligence Community or Military in Criminal Investigations." Prosecutors should consult that memorandum and their supervisors regarding discovery obligations relating to classified or other sensitive national security information.  As a general rule, in those cases where the prosecutor, after conferring with other members of the prosecution team, has a specific reason to believe that one or more elements of the Intelligence Community (IC) possess discoverable material, he or she should consult NSD regarding whether to request a prudential search of the pertinent IC element(s).  All prudential search requests and other discovery requests of the IC must be coordinated through NSD.

Although discovery issues relating to classified information are most likely to arise in national security cases, they may also arise in a variety of other criminal cases, including narcotics cases, human trafficking cases, money laundering cases, and organized crime cases.  In particular, it is important to determine whether the prosecutor, or another member of the prosecution team, has specific reason to believe that one or more elements of the IC possess discoverable material in the following kinds of criminal cases*:*

- Those targeting corrupt or fraudulent practices by middle or upper officials of a foreign government;

- Those involving alleged violations of the Arms Export Control Act or the International Emergency Economic Powers Act;

- Those involving trading with the enemy, international terrorism, or significant international narcotics trafficking, especially if they involve foreign government or military personnel;

- Other significant cases involving international suspects and targets; and

- Cases in which one or more targets are, or have previously been, associated with an intelligence agency.

For these cases, or for any other case in which the prosecutors, case agents, or supervisors making actual decisions on an investigation or case have a specific reason to believe that an element of the IC possesses discoverable material, the prosecutor should consult with NSD regarding whether to make through NSD a request that the pertinent IC element conduct a prudential search.  If neither the prosecutor, nor any other member of the prosecution team, has a reason to believe that an element of the IC possesses discoverable material, then a prudential search generally is not necessary*.*

**B.     Timing of Disclosures**

    1.      Rule 16(a) makes the government's discovery obligations contingent upon a defendant's request.  However, in this district, the standing order requires disclosure at arraignment without a request by the defense.  In order to comply with this directive, AUSAs must begin addressing discovery prior to indictment.  ***Absent unusual circumstances, no case should be indicted until discovery materials have been prepared or will be prepared for disclosure in accordance with the district's standing order requiring our office to provide or make discovery available to the defense at arraignment***  If a case is too complex and/or otherwise unique to provide or make discovery available by the date set in the standing order, the AUSA consistent with this district's standing discovery order, must move no later than 21 days after the date of arraignment to have the case deemed complex so as to be treated differently from cases generally covered by the standing discovery order.

           AUSAs must be mindful that the duty to disclose is a continuing one. Any newly discovered material must be disclosed promptly and memorialized, consistent with the policy described in Section M.

    2.      *Brady* - Consistent with the discovery standing order, AUSAs shall, no later than seven days before trial, or if within seven days of trial, as soon as practicable after discovery of such information, disclose all material information which may be favorable to the defendant.  Any questions about any material should be submitted to the court for an *in camera* review.

    3.      *Giglio* - Consistent with the discovery standing order, AUSAs shall, no later than seven days before trial, or if within seven days of trial, as soon as practicable after discovery of such information, disclose all impeachment information contemplated by the *Giglio* rule.  This decision must be informed by the prosecutor's decision on who will be called as a witness at trial, which generally is not made until right before trial.  (See USAM § 9-5.001).

    4.      Jencks Act and Fed.R.Crim.P. 26.2.- It is the policy of this Office to disclose Jencks Act material 48 hours before the commencement of trial. In those instances where the identity of the witness is the subject of a protective order (per Fed. R. Crim. P.

> 16(d)), *Jencks* disclosure should be made 48 hours before the witness testifies, unless otherwise ordered by the presiding judge.  In large or complex cases where there is no real threat to the safety of witnesses, the government may disclose Jencks Act material earlier.

AUSAs should always consider security concerns of victims/witnesses when making discovery timing decisions.  AUSAs must also consider protecting ongoing investigations, preventing obstruction of justice, addressing investigative agency concerns and other strategic considerations that encourage a just result in our cases.  **Deviations from the timing policy must be approved by a supervisor**.

### C. Categories of Discovery

1. RULE 16(a) sets forth the government's basic discovery obligations, and much of the Court's standing order mirrors the rule.  Under Rule 16(a), the government is required to disclose written or recorded statements of the defendant; the substance of any oral statements made by the defendant in response to interrogation by a known government agent; the defendant's criminal history; all documents or other tangible evidence the government plans to introduce in its case-in-chief or which are material to the defense; reports of physical, mental, or scientific examinations (such as handwriting analysis, drug analysis, fingerprint reports, etc.) to be introduced by the government in its case-in-chief or which are material to the defense.  Expert witness disclosures and summaries shall be provided pursuant to the Court's standing discovery order.   Rule 16 explicitly excludes from disclosure witness statements and internal reports written by government agents or attorneys in connection with the investigation or prosecution of the case.

2. *Brady* and *Giglio*-It is imperative that we adhere to and take a broad view of our responsibilities under *Brady and Giglio* to promptly disclose this information to the defense.  This includes information possessed by any federal, state, or local law enforcement agency which falls within the purview of the prosecution team as described later in this policy.   This information must be disclosed to the defense regardless of whether the defense requests the information and whether the evidence has yet been formally memorialized.  It is the responsibility of every AUSA to specifically inquire about the existence or potential existence of any such information from every agency involved in a particular case.

3. The *Jencks* Act requires the government to make "witness statements"

available to the defense after the witness testifies on direct examination. (Rule 26.2 imposes the same requirement on the defense for all witnesses other than the defendant.)  "Witness statements" include writings that the witness made, signed, or adopted; recordings of the witness; substantially verbatim written recordings by a person interviewing the witness; and grand jury transcripts.  **When making grand jury transcripts available to defense counsel, AUSAs must be mindful of the provisions of Rule 6(e) governing such disclosures and must seek a protective order before such disclosures are made.**

As a matter of law, a court cannot order the government to disclose witness statements before the witness has testified at trial.  However, as stated previously in the timing of disclosures section of this policy, it is the policy of this office to provide *Jencks material* 48 hours before trial.  Furthermore, an agency report of an interview of a witness typically is not a "witness statement" – as it is usually not substantially verbatim and has not been adopted by the witness.  While judges and defense counsel often treat agents' interview reports as witness statements, we do not turn them over and should be prepared to cite controlling law in the circuit should this issue arise.

If a witness statement contains *Brady* material, it should be disclosed as soon as possible upon discovery by an AUSA in order to allow the defense to make use of it.  Our *Brady* obligations trump the delayed disclosure provision of the *Jencks* Act that allows us to defer disclosure of witness statements until after a witness testifies.  However, if early disclosure of *Brady* and/or *Giglio* material would subject a witness to harassment, intimidation or threaten an ongoing investigation, AUSAs should make an *in camera* request for a protective order to withhold disclosure for that reason until some other appropriate time or provide disclosure in an alternative form. The application to the court for a protective order should make clear that the government intends to delay disclosure of exculpatory material that would identify a witness.

**D.  Disclosure of Reports of Interview for Testifying/Non-Testifying Witnesses**

Except as provided herein, all law enforcement reports of interview (ROIs) such as FBI 302s, and DEA 6s, will be made available for inspection at the United States Attorney's Office at a time following arraignment as agreed upon by the parties.  In non document intensive cases, AUSAs should consider providing copies of ROIs to defense counsel subject to the cautionary language herein.

Exceptions may apply where an ROI contains impeachment or exculpatory

6

information as our *Brady* and *Giglio* obligations trump Rule 16 and *Jencks*.  In that situation,  consideration should be given as to whether to provide the ROI itself or instead compose a letter or email to the defense containing the impeachment/exculpatory information.  An agent's ROI is *Jencks* if the agent is going to testify about the subject matter contained in the ROI.  Therefore, an AUSA must disclose the ROI as the *Jencks* material of the testifying agent.  If there is an issue of early disclosure which has the potential of involving the safety of a witness or a victim, AUSAs are required to discuss the matter with their supervisors to decide whether to seek a protective order or authorization for non-disclosure, as appropriate.  AUSAs must document the items made available for inspection in a manner consistent with Section M of this policy

### E. Scope of Prosecution Team

When gathering discoverable information, AUSAs should collect from the members of the prosecution team all information that is required to be produced by Federal Rules of Criminal Procedure Rules 12 and 16; the *Jencks Act* and Federal Rule of Criminal Procedure 26.2; FRE 404(b) and 413-14; and *Brady* and *Giglio*.  In USAM 9-5.001, "prosecution team" is defined as including "federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant."  The AUSA needs to know which agencies have played a role in the investigation and make all reasonable inquiries to ascertain what pertinent case information exists.  When identifying members of the prosecution team, AUSAs should err on the side of inclusiveness, in accordance with DOJ guidance.

In complex cases involving task forces, multi-district investigations, parallel proceedings, or other non-criminal investigative or regulatory agencies, AUSAs should examine the relationship of all entities to determine "whether the relationship with the other agency is close enough to make it part of the prosecution team for discovery purposes." *See* DAG Ogden's Criminal Discovery Guidance for factors that may aid in determining whether an entity should be considered part of the prosecution team

### F. The Scope of Materials AUSAs should review to make discovery determinations

The AUSA should seek out discoverable information from the prosecution team. The gathering process should include a review of the following potential sources of discoverable information:

   **1.   Investigative Agency's Files**.

All substantive case-related information in the possession of an agent who is part of the investigative team should be reviewed by the AUSA to determine whether it should be disclosed as part of discovery. The search for information should not be limited to formal investigative reports such as FBI 302's, DEA-6's, IRS MOI's, etc. The investigative agency may also have substantive case-related information in other formats or locations that an agent may not consider to be part of the "investigative" file, such as electronic communications (EC's), searchable electronic databases, inserts, emails, or other forms of electronic communications. It may not be necessary to disclose the information in its original format, but AUSAs should review the information in its original format, whenever possible.

2. **Confidential Informant (CI)/Witness (CW)/Human Source (CHS) Files**.

These files will likely contain *Giglio* information which should be disclosed to the defense or to the court for a ruling on whether it should be disclosed to the defense. AUSAs should make arrangements with the investigative agency possessing the file(s) to review the file(s) personally, whenever possible. If the file is located out of the district, AUSAs may consider asking an AUSA in the district where the file is located for assistance in reviewing the file.

3. **Evidence and Information Gathered During the Investigation.**

AUSAs should review all evidence and information gathered during the course of the investigation, including, but not limited to, information and evidence gathered via search warrant, subpoena (grand jury, administrative, inspector general, etc), Title III wiretaps, consensual /monitorings, surveillance, and witness interviews. If the volume of evidence makes it impractical for the AUSA to review all the evidence, this obligation may be satisfied by making the evidence available to the defense for inspection and copying.

4. **Documents or Evidence Gathered by Civil Attorneys and/or Regulatory Agencies in Parallel Civil Investigations**.

If civil attorneys and/or regulatory agencies involved in parallel civil investigations are deemed to be part of the prosecution team, AUSAs should also gather and review any and all information and evidence from them that could be discoverable using the criteria set forth in DAG Ogden's Criminal Discovery Guidance.

5. **Substantive Case-Related Communications (emails, tweets, text messages, memoranda, notes)**

Substantive case-related communications should be reviewed and disclosed in accordance with our office policy, see the Northern District of Alabama's Policy for email use in criminal cases.

### 6. Personnel and Disciplinary Files that May Contain Potential *Brady or Giglio* Information Relating to Law Enforcement Witnesses

AUSAs should determine whether each potential law enforcement witness has on or off duty instances of misconduct, including pending investigations, that may qualify as potential impeachment or exculpatory information. *See* also section I, below.

### 7. Handwritten Notes of Agents

AUSAs should review the agent's notes of critical interviews, which would include any interview of a defendant, and the notes relating to any report of interview the accuracy of which the defense has questioned. *See also* section L, below.

### 8. Presentence Reports

If an AUSA has a witness who is or was a defendant in federal court, in most cases there will be a Presentence Report (PSR) relating to that witness. The PSR may contain Jencks, *Brady*, or *Giglio* that may need to be disclosed at the appropriate time. We have agreed with the court to obtain the court's consent to disclose any relevant information contained in a PSR. AUSAs should notify and consult with a supervisor, and then follow this procedure:

a. Review the PSRs of witnesses for potential Jencks, *Brady* or *Giglio*. If the witness was a defendant in another district, the AUSA should contact the other district to get the PSR.

b. Identify what, if any, information in the PSR is arguably *Brady/Giglio*/Jencks.

c. If the AUSA identifies information that he or she believes should be disclosed and that information has not been disclosed elsewhere and is not readily available from another source, the AUSA should prepare a disclosure motion and order requesting either an *in camera* review or disclosure.

d. Attach as Exhibit(s) to the motion the PSR(s) with the material we seek to disclose highlighted. We want the judge to have the entire PSR, but be able to easily discern what we believe should be disclosed.

e. Prepare a separate motion and order to SEAL the disclosure motion and exhibits.

f. File the disclosure motion and proposed order with the TRIAL judge (not the sentencing judge) along with the motion and order to seal.

g. When the disclosure order is signed, serve defense counsel with the material from the PSR covered by the order and serve a COPY of the ORDER on

defense counsel.

With regard to Jencks material, the case law is clear that a testifying witness's entire PSR is NOT the witness's Jencks material.  That is, failing to object to the PSR is not equivalent to the witness's adoption of the entire PSR as a statement under the Jencks Act.  However, the testifying witness's PSR may contain Jencks material and it is most likely to appear in the defendant's version of the offense.   AUSAs should examine the defendant's version of the offense to determine: (a) if it falls within the Jencks Act definition of statement--was it written by the defendant, a quote, or a substantially verbatim recital of an oral statement; and (b) if it relates to the subject matter of the witness's testimony.  Of course, even if it is not Jencks, it may still be subject to disclosure as *Brady* or *Giglio*.

## G.     Responsibility for conducting the Review

AUSAs must ensure that all the materials described in Section F of this policy are reviewed for discoverable information.  The highly preferable practice is for AUSAs to personally review the information in every case if possible, but such review is not always feasible or necessary.  Because we are ultimately responsible for compliance with discovery obligations, the AUSA's decisions about how to conduct the review is controlling.  This process may involve agents, paralegals, agency counsel, and computerized searches.  Although AUSAs may delegate the process and set forth criteria for identifying potentially discoverable information, they cannot delegate the disclosure determination itself.   In extremely large or otherwise complex cases, each individual involved in the review process must be closely supervised by the AUSA, however the AUSA is ultimately responsible.  AUSAs should always be mindful not to disclose classified, privacy act-protected or other sensitive information such as tax records without proper approval.

## H.     Disclosure of Electronic Communications

Because of the duties imposed upon AUSAs to disclose material, documents and information falling within the ambit of the Rules 16, 26.2 of the Federal Rules of Criminal Procedure, Title 18 United States Code, Section 3500, *Giglio*, *Brady*, *Kyles v. Whitley*, and *Bagley*, AUSAs should refrain from communicating with other AUSAs, agents or witnesses through any electronic means, including, but not limited to email and text messages, especially where those communications involve trial or investigative strategy, witness statements, witness credibility or trial exhibits.  Substantive case-related communications may contain discoverable information. AUSAs should also be careful not to disclose any privileged communications. For a more complete discussion of substantive case-related Electronic communications, see the Northern District of Alabama's Policy for email use in criminal cases.

**I.	Obtaining *Giglio* Information from Local Law Enforcement Agencies**

*Giglio* Policy (Law Enforcement Witnesses)

1.	Overview

	AUSAs should have candid conversations with all the law enforcement officers with whom they work regarding any potential *Giglio* issues.  It is expected that an AUSA will be familiar with the District's *Giglio* plan and obtain all potential impeachment information directly from agency witnesses.  To formalize this process, the office has a designated Requesting Official concerning *Giglio/Brady* material.  In this capacity, the Requesting Official coordinates all formal requests from the U.S. Attorney's Office to covered law enforcement agencies, to search for impeachment information on potential witnesses.  Local law enforcement agencies are included in this policy.

2.	Requesting the Information

	Once an AUSA determines a law enforcement agency employee will be a witness, a written request to the Requesting Official should be immediately submitted.  The request should include the name of the agents and case, the nature of the charges, and the expected role of the witness in the case.  Timeliness is essential in order to get the information required in time for the testimony.  Many agency requests must be routed through headquarters and thus as much lead time as possible is preferred.

3.	Submission of Request to Agency

	A.	Once the formal request to the agency is made, the agency official will advise the U.S. Attorney's Office of any information pertaining to:

		1.	A finding of misconduct or similar adjudication that reflects upon the truthfulness or possible bias of the employee, including a finding of lack of candor during an administrative inquiry;

		2.	Any past/pending criminal charge; and

		3.	Any credible allegation of misconduct that reflects upon the truthfulness or possible bias of the employee.

	B.	Any allegation that was not substantiated, not credible, or resulted

        in exoneration need not be provided by the agency unless:

        1.      The court issued an order or decision requiring disclosure;

        2.      The allegation was made by a federal prosecutor or judge;

        3.      The allegation received publicity; or

        4.      Disclosure is otherwise deemed appropriate by the AUSA.

4.      If Potential Impeachment Evidence Exists

The requesting official will immediately provide any potential impeachment information to the AUSA. The information must be treated as sensitive for purposes of storage and access. The AUSA handling the case will be responsible for determining the extent to which disclosure to the court and defense counsel is warranted. Where appropriate, the AUSA should consult with a supervisor about seeking an ex parte *in camera* review by the court regarding whether the information must be disclosed. Protective orders should be sought where possible.

**Practice tip: AUSAs or their designee should also consider searching nontraditional places for this information such as My Space, Facebook, You Tube, Twitter and Google**.

### J. Disclosure of *Giglio* Information Relating to Non-Law Enforcement Witnesses

AUSAs must gather and review all potential *Giglio* information known by or in the possession of the prosecution team relating to non-law enforcement witnesses. That information includes, but is not limited to:

Prior inconsistent statements (possibly including inconsistent attorney proffers)
Statements or reports reflecting witness statement variations (see below)
Benefits provided to witnesses including:

- Dropped or reduced charges
- Immunity
- Expectations of downward departures or motions for reduction of sentence

- Assistance in a state or local criminal proceeding
- Considerations regarding forfeiture of assets
- Stays of deportation or other immigration status considerations
- S-Visas
- Monetary benefits
- Non-prosecution agreements
- Letters to other law enforcement officials (e.g. state prosecutors, parole boards) setting forth the extent of a witness's assistance or making substantive recommendations on the witness's behalf
- Relocation assistance
- Consideration or benefits to culpable or at risk third-parties

Other known conditions that could affect the witness's bias such as:

- Animosity toward defendant
- Animosity toward a group of which the defendant is a member or with which the defendant is affiliated
- Relationship with victim
- Known but uncharged criminal conduct (that may provide an incentive to curry favor with a prosecutor)
-

Prior acts under Fed.R.Evid. 608
Prior convictions under Fed.R.Evid. 609
Known substance abuse or mental health issues or other issues that could affect the witness's ability to perceive and recall events

**Practice tip: AUSAs or their designee should also consider searching nontraditional places for this information such as My Space, Facebook, You Tube, Twitter and Google**.


K. **Disclosure Relating to Trial Preparation Witness Interviews**

All AUSAs have a duty to interview all trial witnesses prior to calling them to testify. This duty includes, but is not limited to, reviewing all previous statements rendered by the witness either made under oath or during an interview with investigators. Moreover, trial witnesses should be shown the trial exhibits they will sponsor, authenticate, or introduce during their testimony.

If an AUSA learns during a pre-trial interview that any of the witnesses intended testimony is *materially* different from a prior statement rendered by the witness, regardless of how or when made, the AUSA must disclose the information **in an appropriate manner** to defense counsel.

### L. Disclosure of Agent's Notes

Generally, the interview notes of agents are not deemed to be *Jencks* material or discoverable pursuant to Rule 16 of the Federal Rules of Criminal Procedure. If the agents' notes are a faithful representation of what is contained in their formal report (ROI), AUSAs have no duty to disclose the interview notes. However, agent notes should be reviewed if there is a reason to believe that the notes are materially different from the formal report, if a written memorandum was not prepared, if the precise words used by a witness are significant, or if a witness disputes the agent's account of an interview. The decision to disclose an agent's interview notes should be made in consultation with the AUSA's supervisor. Additionally, consistent with the district's standing order, AUSAs shall advise all agents and officers involved in all cases to preserve all of their rough notes until the conclusion of the appellate process. Where an AUSA is contemplating filing charges under 18 U.S.C. § 1001 or obstruction of justice based on an agent's witness interview, the AUSA must review the rough notes.

### M. Maintaining Records of Disclosure

Faithful adherence to the discovery and disclosure duties imposed on AUSAs should be accompanied by evidence of the discharge of those duties. Accordingly, AUSAs must formally document, for the file, that counsel for the defendant has received discovery by providing a cover letter or filing with the court documenting what evidence the attorney for the government disclosed to counsel for the defendant and the date of the disclosure.

The documentation must also contain a written inventory of the materials provided. As documents are gathered during the course of an investigation, AUSAs should make a complete and organized record of what has been gathered by the prosecution team. Accordingly, in most cases, AUSAs should Bates label the documents.

**Do not Bates label original documents.** Scan the originals and Bates label the electronic version. The originals should be kept in the order and condition in which they were obtained.

There may be times that a production or seizure of records is too voluminous for scanning. In this instance, AUSAs should make the documents available for review by defense counsel. For items we make available for inspection, AUSAs must formally document what was provided for inspection.

Our duty to disclose is a continuing one. The documentation of receipt shall always note that we are providing evidence known to date but that additional information may be obtained and additional disclosures may be made as they become known. Consideration should also be given to retaining an exact copy of the discovery

given to the defense for later reference.

**N.    Reciprocal Discovery**

In every case and consistent with the standing discovery order for this district, AUSAs must request reciprocal discovery within 10 days after receipt by the defendant of materials from the government responsive to its discovery obligations under Rule 16 of the Federal Rules of Criminal Procedure.  If the defendant does not make this production in accordance with the standing discovery order, the government attorney must file a written request with the court.