FILED
2018 Feb-16 PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA



LIGHTFOOT FRANKLIN WHITE LLC
TRIAL & APPELLATE COUNSEL

JACKSON R. SHARMAN III

Writer's Direct Dial: 205-581-0789
Writer's Direct Fax: 205-380-9189
E-Mail: jsharman@lightfootlaw.com

November 3, 2017

*Via Electronic Mail*
George A. Martin, Jr, Esq.
Robin B. Mark, Esq.
John B. Ward, Esq.
Assistant United States Attorneys
Office of the United States Attorney
Northern District of Alabama
Birmingham, Alabama

Re:   *United States v. Gilbert, et al.*
      Case No. 2:17-cr-00419-AKK-TMP
      United States District Court for the Northern District of Alabama

Dear George:

Thank you for your letter of October 20, which responded to my letter of October 13 regarding discovery and disclosures.

There are outstanding issues from the October 13 letter that we need to address. For ease of reference, I will use the same numbering convention as in the October 13 letter.

2. **Preservation of documents**

We requested confirmation that the Government has preserved all relevant documents and put in place at the outset of the investigation a document "hold," with appropriate follow-up, designed to preserve all documents relevant to the investigation. We renew the request and again request copies of such whole notices.

If no such steps were taken, please confirm.

George A. Martin, Jr., Esq.
Robin B. Mark, Esq.
John B. Ward, Esq.
November 3, 2017
Page 2

### 4. *Brady* Material and Rule 16 Disclosures

I appreciate the statement that the "United States has provided discovery pursuant to Rule 16 and, after careful review, all known Brady and Giglio material." That does not appear to be the case in all instances, however.

As you know, we have been reviewing material at your office. [We again address the office's "no copies" policy below]. Our review continues, but, at a minimum, the 302s of Oliver Robinson in various instances specifically relate that his appearance before the AEMC, his vote, and the letters he wrote were not connected to the payments to the Oliver Robinson Foundation. This type of evidence negates elements of the charged offenses, to include the Government's burden to prove that the alleged official acts were done in exchange for payments to the Foundation. As a result, all of Robinson's 302s contain Brady material.

The 302s of both Oliver Robinson and John Powe contain multiple recitations of their statements that the various entities that paid money to the Foundation were unaware that Robinson and Powe were using that money for personal expenses. This evidence also tends to negate the quid pro quo that the Government must prove in this case. As a result, these 302s are exculpatory and contain Brady material.

The following are non-exclusive examples of items are clearly *Brady* and *Giglio* and should have been produced:

2/13/17 Interview of Oliver Robinson interview:

"Balch did not ask Robinson to approach ADEM."

"When asked how he reconciled having a contract to represent the position of Balch and Drummond and having been elected to represent the people, Robinson stated they did nothing they would not have done had Balch not been involved."

"Robinson confirmed there was a joint resolution in the legislature about the Birmingham Superfund issue. Robinson said it was a voice vote, and he did not vote and did not know if he was even present that day. Robinson saw the resolution, which was offered by Senator Waggoner, in some of the information Amanda Robinson had."

"When asked how he could be certain he did not vote, Robinson advised that he went to Maggie, last name not recalled, who was previously the clerk for the Rules Committee, and asked her to check. Robinson did not know if he voted with regard to the resolution because there is no record."

George A. Martin, Jr., Esq.
Robin B. Mark, Esq.
John B. Ward, Esq.
November 3, 2017
Page 3

"When asked about a text exchange he had with Powe in June 2015 about becoming millionaires, Robinson advised they were referring to the possibility they might become administrators of a settlement for North Birmingham. Roberson and Gilbert did not know about the discussions between Robinson and Powe regarding management of settlement funds. It was Powe's idea, as he had been involved in a settlement in Anniston."

### 7/19/17 Interview of Oliver Robinson

"With regard to an email dated December 11, 2014, Bates numbered Balch-ORF-PRIV-4640, Robinson explained that he and John Powe decided to use the Oliver Robinson Foundation (ORF) to perform the work for Balch and Drummond because a non-profit foundation was involved in rebuilding the community at a Superfund site in Spartanburg, South Carolina. When there is a settlement at Superfund sites, the companies involved decide on a foundation to assist with the settlement. Robinson and Powe thought there was a greater likelihood of ORF being selected to manage a settlement in North Birmingham if the companies involved saw that ORF had already played some role. They also saw that there would be a tax benefit in using a non-profit."

"This was a private strategy between Robinson and Powe regarding the settlement. They did not discuss it with Gilbert and Roberson, as Gilbert and Roberson did not want any settlement. Robinson and Powe knew a foundation in South Carolina had managed settlement funds, but they did not know specifics about the foundation."

"When asked, Robinson said he did not really use the talking points prepared by Gilbert because the issues were simple, i.e., when EPA was coming in and what its focus would be."

"What they [Gilbert and Roberson] wanted Robinson to say was different, though not counter, to what he wanted to say. They wanted ADEM to come test the area and say who was responsible."

### 7/11/17 Interview of Oliver Robinson

"Robinson said that because the school system, business community, and mayor were all against EPA before Robinson and his group got there, it emboldened them."

George A. Martin, Jr., Esq.
Robin B. Mark, Esq.
John B. Ward, Esq.
November 3, 2017
Page 4

3/2/17 Interview of Oliver Robinson

"Robinson had no conversations with Roberson about what to say ADEM/EMC; Roberson provided no bullet points. Robinson said he knew what he wanted to say at the meeting and did not speak to anyone else about what to say."

"Powe was the communicator in the arrangement between ORF and Balch. Powe communicated with Gilbert, and information came back to Robinson through Powe. Powe did not tell Robinson what to say at the EMC meeting. Robinson went to the meeting alone. Neither Gilbert nor Roberson attended."

"Regarding the Senate joint resolution (SJR97] sponsored by Senator Jabo Waggoner [urging the EPA to reconsider its proposal to include the 35th Avenue site on the NPL without the support of the State and urging ADEM to combat the EPA's overreach], Robinson said he was in the room when it came up before the House Rules committee but did not know in advance that the resolution was coming up. Neither Roberson nor Gilbert uttered a word to Robinson about the resolution."

These quotes are only examples.

*Redactions as* Giglio

We note that there are extensive redactions in Oliver Robinson's 302s. His awareness of other criminal conduct is potential Giglio material.

We request that the Government produce copies of these documents; review its materials with care; and produce *Brady* and *Giglio* material to us. Again, we will pay for the copies, but we are entitled to these documents.

Brady *Includes FBI Agents' Text Messages*

We have not seen any agents' text messages. Have FBI special agent Ashley Hunt's texts and IRS agent Matthew Temples's texts been reviewed for Brady and Giglio? In addition, such texts are Jencks material. In addition, we renew our request that all agent text messages be preserved.

Brady *Includes the Absence of Inculpatory Evidence*

As we noted in the letter of October 13, "[i]n the context of a putative conspiracy, the absence of inculpatory evidence is itself exculpatory. Accordingly, to the extent that any witnesses have had no information about or lack personal knowledge of Mr. Gilbert's

George A. Martin, Jr., Esq.
Robin B. Mark, Esq.
John B. Ward, Esq.
November 3, 2017
Page 5

involvement in the crimes charge in the indictment," that information is *Brady* and should be produced to us.

Our review continues, but even our initial review demonstrates that most of the material that has been made available to us but copies of which have not been provided contain no evidence on these points inculpatory of Mr. Gilbert; are thus *Brady*; and should have been produced to us. Again, we will pay for copying of these materials.

> Brady *and* Giglio *statements by staff and employees of the EPA and of the United States Attorney's Office for the Northern District of Alabama*

Your letter of October 20 did not address whether a review has been conducted for *Brady* and *Giglio* in this category. In addition, we do not agree that the EPA is not part of the prosecution team. We believe that, during the review and investigation of this matter, there were communications between the EPA and the USAO for the Northern District of Alabama.

### 6. Early Production of Jencks Material

For the reasons stated in our letter of October 13, we do not see any reason why Jencks material cannot be provided now. There is no danger to witnesses in this case, nor any other articulable reason to withhold such information except to delay proceedings and hinder the defense. In addition, given the number of out-of-town counsel in this case, early production is simply good case management.

### 7. Grand Jury Testimony, Proffers, 302s and Statements

In our letter of October 13, we identified with specificity several entities and categories of persons. Please confirm that, with regard to those specific persons and categories, the Government has produced all Brady and all Giglio.

### 8. Production of 302s and Grand Jury Transcripts

Your letter of October 20 did not address our request that we be provided actual copies of documents, rather than being required to waste resources and hours simply copying out material. Our request is particularly compelling given the number of out-of-town lawyers in this case. Please set out the Government's position with regard to this issue so that we need not bother the cord if it is a non-issue.

George A. Martin, Jr., Esq.
Robin B. Mark, Esq.
John B. Ward, Esq.
November 3, 2017
Page 6

### 10. 404(b) Evidence as to Government Witnesses

Your letter of October 20 addresses 404(b) evidence but not as to Government witnesses. We request for such evidence as to Government witnesses, especially as Oliver Robinson.

### 11. Documents from Certain State Agencies

Your letter of October 20 did not address our request for ADEM, AEMC and ADPH documents. Please produce them or confirm that you have none.

### 12. Documents from Certain Federal Agencies

Your letter also did not address our request for EPA and ATSDR records. Please either produce them or confirm that there are no such documents.

### 17. *Bruton* Disclosure

Although we appreciate that you have no intention of introducing a co-defendant's statement that would "implicate *Bruton*," it is for the Court — not the Government or the Defendant — to make that determination. Please let us know which portions of Mr. McKinney's statement and of Mr. Roberson's statement the Government intends to introduce. We may have no objection, or we may be able to reach an agreement on a limitation that resolves any *Bruton*-related concerns. To the extent we are unable to reach an agreement, though, we will need to raise that matter with the Court.

### 18. *Byrd* Disclosure

Your letter does not answer the question whether the Government has any statements by Mr. Gilbert's co-defendants that have not been disclosed to us. (I realize that some have been disclosed).

### 19. Evidence Identified at the Press Conference

We again request, pursuant to Rule 16(a)(1)(E)(i) the documents that appear to be part of the Government's case in chief and described on pages 12 and 13 of our letter of October 13.

\*\*\*\*

This letter is an effort at meet-and-confer. I look forward to speaking with you about these matters at your convenience.

George A. Martin, Jr., Esq.
Robin B. Mark, Esq.
John B. Ward, Esq.
November 3, 2017
Page 7

      With best wishes, I am

                              Sincerely yours,

                              Jackson R. Sharman III

JRSIII:smh

cc:    David Burns, Esq. (via email)
       Henry Frohsin, Esq. (via email)
       Alan Baty, Esq. (via email)
       Brandon Essig, Esq. (via email)
       Jeffrey P. Doss, Esq. (via email)